UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---

Eric Owens, Pro Se

                          Plaintiff

-against-

1. Gregory Cutrone Clerk to the Village Justice
2. Allen Mathers, Justice Garden City
3. C. Gomoka, Garden City Village Traffic Prosecutor

                         Defendants

In their Official and Individual Capacity

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 29 2025 ★
LONG ISLAND OFFICE

CIVIL RIGHTS COMPLAINT

42 U.S.C. § 1983

CV 25 2399

BROWN, J.

TISCIONE, M.J.

RECEIVED
APR 29 2025
EDNY PRO SE OFFICE

---

1. I <u>ERIC OWENS, Claimant</u> respectfully shows to this Court as follows:

2. I reside at 14 Butler Street Glen Cove, NY 11542 APT 2C.

## JURISDICTION AND VENUE

Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391(b) as the acts complained of occurred therein.

"We conclude as follows: To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under §1983 for malicious prosecution, **a plaintiff need only show that his prosecution ended without a conviction**". THOMPSON v. CLARK 596 U. S. ____ (2022)

REC'D IN PRO SE OFFICE
APR 29 '25 PM 1:20

3. The claim against the named defendants is for violating the claimants 1st, 4th, 5th 6th, and14th Amendments, Federal and New State Constitutional Rights Violations, Malicious Prosecution, Violating The Civil Rights Act of 1964, Abuse of Office, Abuse of Power and Authority, Conspiracy to violate Claimants Civil Rights along with other NY State Government Officials the private attorney and the attorney's firm, who were retained 2 years ago to defend the principal actor of the violations Officer John Russell of the Garden City (GC) Police Department in a Federal Complaint filed by this claimant in October 2023 (23-cv-7730).

4. Also named in the federal complaint are The Village of Garden City, The GC Police Commissioner, and a Sergent.

5. The People of The State of New York has violated NYS Rules of Discovery, Speedy Trial, FOIL Laws, and have engaged with the other defendants to harass, intimidate this Claimant.

6. For 2 years, 3 months, The People have not responded to any of my motions related to the 3 tickets and allowed the private attorney of the defendants that I am suing to act as The People of The State of New York, in order to gain an advantage against the claims of private attorney's clients.

7. As a result of the defendants acting on behalf of The State of New York, Claimant has suffered server emotional, psychological, documented trauma, pain and suffering, has been unemployable, and is now in debt to his landlord and other creditors.

8. **1st State Actor:  The People of The State of New York, Garden City Traffic Prosecutor on behalf of Police Officer John Russel, Garden City Police Department,** On January 7, 2023, at 10:30 PM, beginning at Glen Cove Avenue and Old Country rd, in the town of Carle Palace, New York, and continued for 6.5 miles, ending at Garden Place, Garden City, New York, at 11: 15 PM and continuing to April 8, 2025.

9. **2st State Actor: Greg Cutrone, former Garden City Justice, now the Supervising Clerk for Garden City Traffic Court for THE INCORPORATED CITY OF GARDEN CITY  351 Stewart Ave, Garden City, NY 11530 who is also a member of the New York State Unified Court System**. Greg's violations began during arraignment for 3 tickets in March 2023, on or around 7:00 PM at Garden City Traffic Court 351 Stewart Ave, Garden City, NY 11530, and has Continued for 2 plus years, with the most recent violations occurring on March 10, 2025, on or around 7:00 PM at Garden City Traffic Court 351 Stewart Ave, Garden City, NY 11530, and again on April 8, 2025, at 7:00 PM, at Garden City Traffic Court 351 Stewart Ave, Garden City, NY 11530.

10. On March 29, 2023, Plaintiff went to GCTC as per the 3 tickets. After being called up to the bench by the Court Clerk Greg. Greg: You want to plead guilty? "No. I'd like to go to trial". G: "Trial! These tickets are a lot of points". (A Violation, Bias).

11. Greg read the tickets and deposition right in front of me, he is trained in law and clearly saw that the address 2 of the 3-tickets state that the violation(s) allegedly occurred at Old Country Road, and that anything on or near Old Country rd. is not GCTC's jurisdiction, its Carle Place, NY ( Nassau County), yet Greg was willingly to encourage me to take a guilty plea and pay a fine, while trying to

persuade me not to go to trial on the alleged 3 traffic violations. It was at that time 3/29/23, that the Plaintiff gave Greg (GCTC Supervising Court Clerk) the 1st motion to dismiss, and a motion requesting a speedy trial, and for discovery.

12. Between 3/23 and up until 9/24, I've spoken with Greg or someone at his office and asked about the discovery that I demanded and a trial date, I continued to get the same answer" no trial date yet". Greg stated that he had no discovery that he sent me the 911 recording from when I called the police on Officer Russelle and the other officers, and that was it.

13. I continued to ask for discovery: the officer notes, of his training with regards to pacing vehicles and continued to get nothing. Greg stated that I must get it from the GCPD.

14. During one phone call Greg informed me that he been over to the GCPD and they wouldn't give him anything.

15. I explained to Greg that he was the Clerk; he's supposed to be neutral, the prosecution not him should not be dealing with the police regarding my discovery.

16. Each time I called Greg, from March 2023 Until September 2023, Greg would ask me what it was that I wanted, and I would have to say, "Greg, I keep putting everything in the motions, are you reading them?

17. Greg continued to ask me what I was asking in my motions and then I would have to explain to him which told me he never read any of them.

18. In September I spoke with a Clerk that stated my trial was scheduled for August 2023, but the was an error with communicating it me and that they would call me with a new trial date. I asked her about the discovery, and she said Greg would have to call me.

19. Later that day Greg called me and informed me that my trial was set for October 23, 2023, at 6:00 PM.

20. I again asked Greg about the discovery and once again he referred me to the GCPD.
21. I asked about who the prosecution was and why they aren't handling this, and he had no answers.

22. On 10/3/23, before 10/23/23 the trial date, I again personally hand delivered to Greg a motion to dismiss, and a motion for discovery, and again I received no answer to the motions.

23. In an effort to obtain discovery on my own, prior to trial, on October 2, 2023 I personally delivered a FOIL request to the GCPD.

24. On October 17, 2023, I received an email from the GCPD FOIL Officer stating that my request was denied was I unlawfully denied the request, but I was denied via email, no reason (s) why I was denied and no information on who can I appeal to as required by law; just a "have a great day."

25. On October 23, 2023, at 10 AM, the morning of the trial, I called the GCTC and asked once again about the discovery. I spoke with a GCTC clerk name Carrie, who told me that "only Greg" can give me discovery, and that I must wait until he comes in at 3 PM.

26. I explained to her that I'm scheduled for trial today at 6 PM, is there anyone that I can speak with, is there a prosecutor? The Clerk stated that "only Greg can help me", he's the supervisor, and she'll have him call me. On the same day, 10/23/23, at 3:15 PM, as I was calling Greg, he called me and again asked me what discovery, forcing me to have no choice but to agree to another adjournment for trial.

27. Between 10/23/23 and 8/8/24, I spoke with Greg who told me that there was no trial date yet, he has no discovery, and that he did not know the name of the prosecutor and that he knew nothing about the motions that I gave to GCTC nor can I get any discovery because everything is in Federal Court and that they don't have an attorney there that deals with Federal Court (which made no sense).

28. On August 8 2024, (9 months passing), petitioner received a letter from GCTC stating that I was scheduled for trial on August 12, 2024 at 8PM, 19 months after the 3 tickets were issued, 18 months from the time that I submitted to Greg the clerk my 1st and 2nd motion to dismiss along with the motion requesting discovery.

29. I still had not received any of the discovery I requested for trial, and to further the bias, the respondent gave the me only 7 days prior notice, with a 5-day period within the 7 days to write the court to request an adjournment which gave me no time to request an adjournment because I had to go to a funeral that evening.

30. **3nd State Actor: Mihi Kim** New York State Assistant Attorney General was made aware and failed to investigate and intervene of the acts of 1, 2 as well as the fact that The People of The State of New York

was not answering my motions, nor will they afford me a trial, nor provide me with the discovery materials that I had requested, several times.

31. **4rd State Actor**: **Letita James** New York State Assistant Attorney General, was made aware of the violations on November 2023, when a copy of a Federal Motion to Dismissed was personally delivered to her office on detailing 30:30 was unconstitutional, and that The People of The State of New York was not responding to my motions, also included was a detailed, account of what took place on January 7 2023, with Officer Russell, also included were the many due process rights violations with the Garden City Court Clerk, she failed to investigate, and intervene and as a results the violations against me continued, with the most recent occurring on April 8, 2025, (2 years 3 months after receiving the 3 traffic tickets).

32. **4th State Actor**: Justice Allen Mathers, Justice for Garden City Traffic Court 351 Stewart Ave, Garden City, NY 11530, who is also a member of the New York State Unified Court System, fraudulently and ex parte submitted to NYS Supreme Court Gary, a false, response stating motion were answered on and denied with prejudice 1/30/25, which not only contradicts what was stated by his counsel in a 2/7/25 court proceeding, but it also contradicts the GCTC Clerk's reply to my question: Clerk: 'no your motions are still pending and you have no trial date yet". (recorded).

33. **4th State Actor**: Justice Allen Mathers, Justice for Garden City Traffic Court 351 Stewart Ave, Garden City, NY 11530, who is also a member of the New York State Unified Court System, continues to use his position and power to harass me by continue to obstruct justice by calling me to trial and not being present, with the most recent occurrence happening on March 10, 2025 at, 6:00 PM, and April 8, 2025 at 351 Stewart Ave, Garden City, NY 11530.

34. **4th State Actor**: Justice Allen Mathers, Justice for Garden City Traffic Court 351 Stewart Ave, Garden City, NY 11530, who is also a member of the New York State Unified Court System, continues to use his position and power to harass me by continue to obstruct justice by calling me to trial, via USPS, Allen knows he has no subject and personal jurisdiction, with his most recent violation on April 8, 2025 at 351 Stewart Ave, Garden City, NY 11530 at 6PM.

35. **4th State Actor**: Justice Allen Mathers, Justice for Garden City Traffic Court 351 Stewart Ave, Garden City, NY 11530, who is also a member of the New York State Unified Court System. I get yet another letter from Justice Allan ordering me to 'trial" on April. 8, 2025 at 6 PM I appeared before Justice Allan on the date he ordered. Once again, Officer Russell was not there for "trial", no

prosecutor was there for a "trial"; however, in the court were 4 Garden City Police Officers standing in the back in a very menacing way. (that's why I record). I asked Justice Allan about trial, he was not concerned with a "trial", he kept asking me for my cell phone, I said "no", I record because you keep harassing me, ordering me here, knowing that I have a lawsuit against this City and GCPD, and I know what you did with that decision because when I came up here on 2/10/25, that lady right there (I pointed to his clerk) said the motions were not answered, you're a liar and a fake judge, you broke the law, you conspiring with others, I just want you to please leave me alone". I told Justice Allan that I have her recorded saying they were not answered and the Justice went crazy, yelling at me, demanding that I give him my phone. I said "no, get a warrant, you have no personal nor subject matter jurisdiction" and I placed my phone on the table in front of me after Justice Allan threatened to seize it and I stated "I dare you". Justice Allan Looked over to the 4 GC police officers and motioned with his head for the to get my phone, and each officer not only stood down, but they looked down at the floor, because they knew that what was taking place was illegal, and that Justice Allan is literally violating the oath he and the officers took to protect and up hold. Those brave GC police officers who stood for what is right. Unbeknown to the officer's what Justice Allan did was ask them to stand in the Court under the false pretense (security). The reality is that he tricked the officers right into his crime scene, and he made each of those cop's witnesses. As I turned around to leave the Court, Justice Allan yells, 'you get back here and that's an order". I turn around and stood back before the bench and stated "I object, you're not only keep calling me here to harass me, but you just seized me. At that point Justice Allan yelled "get out of here".

## The events leading up to this claim are as follows:

36. On the date of January 7, 2023, at / or around 10:30PM, I Eric Owens was driving s/b on Glen Cove Road, operating a large, Jeep rented by my wife hours earlier.

37. I stopped at the red-light heading S/B on Glen Gove rd., and Old Country Road of which _not_ Garden City, but Carle Places in the County of Nassau.

38. When the light turned green, I drove across Old Country Road, (there are 5 lanes that I crossed, then once across, the road turns into Clinton Road, and approximately 1 block after the 5-lane crossing onto Clinton, a sign is posted reads welcome to Garden City)

39. Upon crossing the 5 lanes, intersection, onto Clinton, to my right, on Old Country rd., I saw the police car, turn on his lights, while making a right off of Old Country Rd., onto Clinton Ave.

40. As I continued to drive, in the far left of the s/b lane, I purposely kept one eye on the road in front of me, and one eye on the officer (who was 3 cars behind me also in the far right lane), because of his lights when he turned, I was preparing to signal, and safely move from the far right of the s/b lane, to the left of the S/B lane; closest to the traffic lane heading N/B to allow the officer access to whatever emergency I thought he was responding to.

41. I signaled, and moved from the far right, s/b lane to the left s/b lane, I was now in front of the vehicle that allowed me to pass in front of it (as stated in Officer's Russelle's Deposition).

42. As I drove, I kept my eye on the patrol car, which I noticed was moving very aggressively around other cars behind me, ultimately ending up directly behind me.

43. I then stopped at a red light at the corner of Steward Ave and Clinton, the police car had also stopped, now directly behind very, very close, in an intimidating way. **(By this time officer Russelle has followed me for 4.1 miles).**

44. It was at that time that I realized that the officer was following me and I became very nervous.

**Note:** Clinton Ave is a very narrow, very bumpy, 4 lane street. At night it's very dark and officer Russelle bad intentions actually placed myself, himself and other motorist lives in jeopardy because it was 10:30 PM at night, not to mention that only a few hours ago, on the same day that this claim arose (1/7/2023), Plaintiff heard reports of an African American Man, who later died, was seriously beaten during a traffic stop; which contributed to the Plaintiff's fear and anxiety when I discovered that the officer was following me.

45. Once the light turned red, I continued driving for another 4 blocks with officer Russelle directly on my back bumper behind me as I nervously tried to keep my eye on him following me, and keep an eye on the motorist on my right, in the far right lane, and keep an eye on the motorist to my right in the n/b lane, 10:30PM at, night, while driving a large Jeep, for the 1st time ever because my wife had just rented that vehicle earlier in the day. This cop could have caused me to hurt a lot of people, because I only have 2 eyes.

46. After I drove about 4 blocks after the light on Steward, officer Russelle turned on his lights, and pulled me over on Garden Place **(A total of 6.3 Miles from Old Country Road)**, and I refused to give him anything because I knew I did nothing, I knew that he was following me for nothing and I did not trust him, and I was actually afraid, so I asked for a supervisor.

47. Many GC police officers showed up and surrounded my car, while Sergent Punch stood at the passenger side window telling me to shut up be quiet as I was trying to tell him his officer followed me for no reason.

48. Another officer approached the driver side and asked me my name, I pointed to my job's name tag which Said **"Greystar Management, Eric, Concierge'**, He asked me my last name I gave it to him, he went back to his car, came back to me and asked, "your birthday is 02/20/1968", I said "yes", and because he was polite I handed him my driver's license, which he took back to officer Russelle who was behind my car sitting in his car. (this was 25 minutes into the stop)".

49. For the next 15 minutes, with Sgt Punch still by the p/s window, I waited for officer Russell to come bring me my driver's license and whatever ticket and I began to experience pain in my stomach from sitting in the car so long, **(I had a protruding hernia in my stomach recently corrected by surgery).**

50. I continued to ask sgt punch why is he taking so long to give me the ticket and my DL, please I have to get to work, I am also having pain in my stomach.

51. Sgt Punch continued to stand there laughing telling me to be quiet and said, "you made him wait, so now he's going to make you wait".

52. This went on for another 15 to 20 minutes until I called 911 and reported that they police were holding hostage, one followed me and that they will not get me my DL and let me leave.

53. The Nassau County Dispatcher transferred me to GCPD, a male who said he was a supervisor answered, I explained to him what was going on and he said, "is this the guy on garden st"? I said, "yes", and he hung up the phone.

**Note**: All activity mentioned was recorded by me using my cell phone, there is a pause in the recording as I was nervously, shaking and crying trying to dial 911 and explain, the recording resumed a bit afterwards.

54. About 10 minutes later, in pain and afraid the hernia will burst, I decided to get out the car, I then walked over to officer Russell vehicle only to find him sitting in the driver's seat relaxing.

55. I repeatedly asked him "please, give me the ticket and my DL, so I can leave".

56. Officer Russell sat in his car, rolled down his window, showed me the tickets and turned his head all

while I was begging him to please let me go.

57. I yelled to sgt punch, "do you see what he's doing and your allowing this'.

58. Officer Russelle fabricated 3 traffic violations, and picked the locations of the 3 traffic violations' out of the air: Unsafe start, unsafe lane change and speeding.

59. What officer Russelle didn't realize was that the addresses he used for where he states "unsafe start and unsafe lane change", are not Garden City New York, but Carle Place, NY, County of Nassau, thus even if the violations did occur Garden City Traffic Court lacks subject matter jurisdiction, and for the speeding violation he used an address that is a train, track hill, where a motorist must slow down to cross. Doing 44 at that location, at that time of the night, on that narrow street, and in the big Jeep that I was driving, for the 1st time, would cause and accident. Not to mention that by that time we were pasted Steward Ave where I realized he was following me, I'm a Black man, 57 yrs old, the last thing in the world we would do is speed up when **we** know the cops have been following behind us, and we are not doing anything nefarious.

60. Officer Russelle wrote 3 fabricated tickets stating that he "observed" me commit an "unsafe start" from a green light at "s/b Clinton and Old Country R. and then afterwards, when passing in front of another vehicle, I went across the yellow warning lines and finally that he "paced" me going 44 in a 30, at St James Place South. Note: the distance from the red light at Steward where we stopped, to the bumpy street / train tracks at St. James South is 1 to 2 blocks, along with officer Russell's close distance behind me makes it scientifically and mathematically impossible for him to have paced me.

61. Officer's Russelle's then unlawfully seized me, when after he completed the mission of writing the tickets, he taunted the me by refusing to return my license, and give me the tickets so I could leave. Instead, he held me up for 45 minutes and taunted me by holding up the completed ticked showing me that he had been completed them, then putting the tickets down, turning his head and ignoring my continuous plea to "please give me the ticket, arrest me or let me go, "Officer Russelle did all these acts in bad faith which began when he racial profiled the Plaintiff and continued 2.5 miles thereafter, with the sole purpose of **harassing** me and to inflict emotional pain upon me.

62. Officer Russelle has a history of racially profiling Black Men and did so to a fellow, retired Black Law Enforcement Officer, he should not have been allowed to be patrolling at night, an area frequently used by Black and Brown Motorist traveling from Hempstead, NY to and from the Roosevelt Field Mall, Movie

Theater and Restaurants, without any supervision, without any body cam, and without a camera on his patrol car. (and if he did have a camera on his vehicle I still do not know because they will not answer my motion(s) requesting such under Discovery).

63. Mihea Kim, Assistant Attorney General for The State of New York, reached out to the Plaintiff regarding the acts of officer Russelle. Thereafter Mrs. Kim requested (and I sent her) a copy of the video, and stated that she will be investigating Officer Russelle for the 1/7/23 incident.

**(Stilled Video: Officer John Russelle intentionally showing Plaintiff that the tickets were completed, then him putting them down ignoring Plaintiff's cries to "please give the tickets and my lisence so I can leave. January 7 2023)**

  

Note: Once again officer Russell places himself and his colleges in a very bad position, by knowing I was very upset, it was very dark, the only one recording anything was me, I was able to step out my car, walk pass the other cops and sgt punch, right up to Russell's p/s window, nobody stopped me nobody searched me, think about that Your Honors', respectfully.

**Eric Owens January 7, 2023, during the unlawful, encounter with Officer Russelle, Sgt Punch standing there doing nothing to stop Russell, other GCP surrounding me like thugs.**

**Plaintiff: January 7, 2023**



64. On March 29, 2023, I appeared in Garden City Traffic Court to answer to the 3 tickets at which time I gave the supervising clerk a motion to dismiss on lack of subject matter jurisdiction, a motion requesting discovery and speedy trial.

65. After my career as a Nassau County bus driver, with NICE Bus Company was "rescinded" because of the "pending tickets ', and after GCTC ignoring my motions, along with recorded conversations I had with the Greg which showed further bias, I filed the 1983 complaint with the District Court, EDNY on 10/13/23 (10 months after receiving the 3 tickets)

66. I will prove that the defendant's actions were all in an tempt to cover for Officer Russell who works right downstairs from the defendant.

**The actions and inactions of the defendant, has made the 3 traffic tickets the longest, unprosecuted, unadjudicated in Garden City Traffic Court's History, In the County of Nassau's History, in the State of New York's History and The Longest Ever in the United States of America, setting a negative precedent.**

**The Garden City Traffic Court Justice Allan, and The People of The State of New York set a secondary (of Many other) negative precedents when they allowed a private attorney who is also the attorney for their Village and The cop to act as The People, and the most egregious, negative precedent set by the**

**defendant's and their other co-conspirators is that there has never been a Judge and Prosecutor in the History of United States litigation that has ever continuously, ordered an accused to "trial", for over 2 years, knowing full well that the Traffic Court Lacked Subject Matter Jurisdiction.**

**This is the only Judge in the United States of America, that has ever ordered a person to "trial" falsely, get the person to their court, and have police officers waiting, yell, scream, unlawfully seize, and attempt to seize a cell phone, and then tell the accused, "You committed those traffic offenses". (All recorded with my cell phone).**

**This is the only Judge in the United States of America, that has had continued, ex-parte communications with the private attorney in order to violate an accuses rights.**

**§241. Conspiracy against rights**

- 18 U.S.C. § 241 (2022) If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same.
- The District Court sustained the conspiracy count against a motion to dismiss, and sustained the substantive counts as to the three official defendants. It dismissed the substantive counts as to the 15 private defendants on the ground that, although the indictment alleged that they had acted "under color" of law, it did not allege that they were acting as officers of the State.
- "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States. . . ." United States v. Price, 383 U.S. 787 (1966).

The due process and equal protection clauses of the Fourteenth Amendment have been used to challenge myriad decisions by local governments as arbitrary and capricious (a violation of "substantive" due process), imposed without notice and an opportunity to respond (a violation of "procedural" due process), or discriminatory (a violation of equal protection). Regardless of the factual basis underlying the suit, the county itself and the county officials actually involved in the conduct in question can be sued.

Due process requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power.[7]

In civil contexts, however, a balancing test is used that evaluates the government's chosen procedure with respect to the private interest affected, the risk of erroneous deprivation of that interest under the chosen procedure, and the government interest at stake.[741]

Hagar v. Reclamation Dist., 111 U.S. 701, 708 (1884). "Due process of law is [process which], following the forms of law, is appropriate to the case and just to the parties affected. It must be pursued in the ordinary mode prescribed by law; it must be adapted to the end to be attained; and whenever necessary to the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. Any legal proceeding enforced by public authority, whether sanctioned by age or custom or newly devised in the discretion of the legislative power, which regards and preserves these principles of liberty and justice, must be held to be due process of law." Id. at 708; *Accord*, Hurtado v. California, 110 U.S. 516, 537 (1884). *See* Medina v. California 505 U.S. 437, 443 (1992).

**People v. Regan**

**2023 NY Slip Op 01353**

**Decided March 16, 2023**

**New York Court of Appeals**

**Appeals Lawyer in New York**

.

*Analysis*:

By statute and constitutional law, New York guarantees criminal defendants the right to a speedy trial and prompt prosecution (*see People v Staley*, 41 NY2d 789, 791; *People v Vernace*, 96 NY2d 886, 887 [2001]; NY Const Art I, § 6; CPL § 30.20). "[T]he State due process requirement of a prompt prosecution is broader than . . . the Sixth Amendment . . . . [and] [i]n some respects the State rule is less rigid in its application than the right to due process recognized under the Federal Constitution" (*Singer*, 44 NY2d 241, 253). This Court has "long held that unreasonable delay in prosecuting a defendant constitutes a denial of due process of law," and that "[a]n untimely prosecution may be subject to dismissal even though, in the interim, defendant was not formally accused, restrained or incarcerated for the offense" (*see Singer*, 44 NY2d at 253 [internal quotation marks omitted]). "[T]he Court of Appeals has never drawn a fine distinction between due process violations based on delay in commencing prosecution and speedy trial violations," and "the factors utilized to determine if a defendant's rights have been abridged are the same whether the right asserted is a speedy trial right or the due process right to prompt prosecution" (*People v Wiggins*, 31 NY3d 1, 12 [2018] [internal quotation marks omitted]). Those factors are:

"(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay"(*Wiggins*, 31 NY3d at 9-10, quoting *People v Taranovich*, 37 NY2d 442, 445 [1975]). " '[N]o one factor or combination of the factors . . . is necessarily

decisive or determinative of the [prompt prosecution] claim, but rather the particular case must be considered in light of all the factors as they apply to it' " (*Wiggins*, 31 NY3d at 10, quoting *Taranovich*, 37 NY2d at 445).

*Analysis Under The Taranovich Factors*:

Applying the *Taranovich* factors to this case, the delay was considerable. Although "there is no specific length of time that automatically results in a due process violation," longer delays are more likely to inflict greater harms (*People v Johnson*, 39 NY3d 92, 97 [2022], citing *Taranovich*, 37 NY2d at 445-446; *see also People v Cousart*, 58 NY2d 62, 68 [1982] [citing *Singer* for the proposition that "a five-year delay prior to trial raises a presumption of prejudice"]).

In *People v Staley*, the Court of Appeals held that a "wholly unexplained 31-month delay" was an "extraordinary time-lapse" that "would, without question, be cause for dismissal of the indictment" even without any showing of prejudice (*see* 41 NY2d at 790-793). Even the People concede that the delay here was "excessive." The fact that the Legislature removed the statute of limitations does not change our analysis (*see* Singas, J., dissenting op at 19 n 7) and if anything heightens the need for constitutional vigilance (*see Singer*, 44 NY2d at 253 ["it cannot be assumed that the Statute of Limitations will adequately protect the defendant against the potential prejudice inherent in any delay, since in this State there is no Statute of Limitations for (rape in the first degree)"]). Under the most charitable interpretation of the record and our case law, the People cannot satisfactorily account for 31 months of their four-year delay"

**The Procedure That Is Due Process**

***The Interests Protected: "Life, Liberty and Property".*** — The language of the Fourteenth Amendment requires the provision of due process when an interest in one's "life, liberty or property" is threatened.

***The Requirements of Due Process.***—Although due process tolerates variances in procedure "appropriate to the nature of the case,"[751] it is nonetheless possible to identify its core goals and requirements. First, "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Thus, the required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling persons to contest the basis upon which a state proposes to deprive them of protected interests. The core of these requirements is notice and a hearing before an impartial tribunal. Due process may also require an opportunity for confrontation and cross-examination, and for discovery; that a decision be made based on the record, and that a party be allowed to be represented by counsel.

(1) Notice. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." This may include an obligation, upon learning that an attempt at notice has failed, to take "reasonable followup measures" that may be available. In addition, notice must be sufficient to enable the recipient to determine what is being proposed and what he must do to prevent the deprivation of his interest. Ordinarily, service of the notice must be reasonably structured to assure that the person to whom it is directed receives it. Such notice, however, need not describe the legal procedures necessary to protect one's interest if such procedures are otherwise set out in published, generally available public sources.

(2) Hearing. "[S]ome form of hearing is required before an individual is finally deprived of a property [or liberty] interest." This right is a "basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment . . . ." Thus, the notice of hearing and the opportunity to be heard "must be granted at a meaningful time and in a meaningful manner."

(3) Impartial Tribunal. Just as in criminal and quasi-criminal cases, an impartial decisionmaker is an essential right in civil proceedings as well. "The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. . . . At the same time, it preserves both the appearance and reality of fairness . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him."

There is, however, a "presumption of honesty and integrity in those serving as adjudicators,"[766] so that the burden is on the objecting party to show a conflict of interest or some other specific reason for disqualification of a specific officer or for disapproval of the system.

**NY VTL § 155** holds that "violations shall be deemed misdemeanors and all provisions of law relating to misdemeanors...except as herein otherwise expressly provided shall apply except that no jury trial shall be allowed for traffic infractions." In other words, while a traffic violation is NOT a criminal matter, for all procedural purposes it must be treated like a misdemeanor.

- The speedy trial provisions for misdemeanors is contained in NY VTL § 30.30(b), which holds that for a trial to be timely it must be held within "ninety days of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a misdemeanor *punishable by a*

*sentence of imprisonment of more than three months.*" This creates a problem for traffic infractions, because while a defendant can get sentenced to jail for a traffic violation, the sentences are rarely authorized for more than 3 months.

- This means that speedy trial goes back to the catch-all under CPL § 30.20, "After a criminal action is commenced, the defendant is entitled to a speedy trial." However, how long of a time is it deemed to be "speedy?"

- For that we have to look at case law. Case law is what judges have determined the laws to be when statutes are silent on the issue and it requires interpretation of statutory intent.

- Numerous New York court cases have held that the speedy trial provision found in *CPL § 30.20* applies to traffic violation cases. The question becomes therefore, what is considered an acceptable time frame within which one charged with a New York traffic violation must be brought to trial in light of *CPL § 30.20?* Two years seems to be the limit.

- **The lead case in this area is <u>People v. Thorpe, 160 Misc.2d 558, 613 N.Y.S.2d 795 (App. Term 2nd Dept. 1994)</u>. In Thorpe the court reversed a trial court's decision denying an oral application to dismiss on the grounds of violation of the right to a speedy trial. The court held that "the constitutional right to a speedy trial applies to all prosecutions," and that "an unexplained delay of over two years in bringing a simple traffic infraction to trial warrants dismissal." This is authoritative law that courts must follow.** For example, see *People v. Matera, 2003 N.Y. Slip Op. 51180(U) (App. Term, 1st Dept. 2003),* <u>People v. Braun, 2014 N.Y. Slip Op. 51582(U) (App. Term, 2nd Dept. 2014)</u>, <u>People v. Mahon, 2007 N.Y Slip Op. 50796(U), Index No.: 14454/05 (Nassau County District Court 2007)</u>, and *People v. Rogoish, 2003 N.Y. Slip Op. 51120(U) (App. Term, 1st Dept. 2003).*

"The term **"liberty"** appears in the <u>due process</u> clauses of both the <u>Fifth</u> and <u>Fourteenth</u> Amendments of the Constitution. As used in the Constitution, liberty means freedom from arbitrary and unreasonable restraint upon an individual. Freedom from restraint refers to more than just physical restraint, but also the freedom to act according to one's own will. On numerous occasions the Supreme Court has sought to explain what liberty means and what it encompasses. For example,":

- The Supreme Court in <u>Meyer v. Nebraska</u> stated "[liberty] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God

- according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."
- In *Bolling v. Sharpe*, the Supreme Court stated "[liberty] is not confined to mere freedom from bodily restraint. Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective."
- In *Ingraham v. Wright*, the Supreme Court stated liberty includes "freedom from bodily restraint and punishment" and "a right to be free from and to obtain judicial relief, for unjustified intrusions on personal security."

**Defendants are Not Entitled to Qualified Immunity:**

Official immunity is a defense that can be asserted by a county official or employee who is sued in his or her individual capacity

Official immunity, however, is not an absolute defense; it is available only for discretionary duties performed in a no malicious manner.⁶ If the duty did not require a discretionary judgment call but instead required the county official to act in a clear, direct, and readily apparent manner, it is called a ministerial duty, and there is no immunity from liability if a jury determines that the act or omission was performed in a negligent way.

The test for qualified immunity is whether a reasonable official who possesses the same knowledge as the official who is on trial would have known that his or her conduct violated the "clearly established" rights of the plaintiff there must be proof of an intentional act or at least gross negligence or recklessness.

The typical case arises when someone is hurt because a county official performed an act in a negligent manner or failed to act in a reasonable manner.

1. "Qualified Immunity "[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citations omitted); see also Krainski v. Nevada ex. Rel. Bd. of Regents, 616 F.3d 963, 968 (9th Cir. 2010); Richardson v. McKnight, 521 U.S. 399, 407-08 (1997); Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). 33 Qualified immunity is only immunity from suit for damages, it is not an immunity from suit for declaratory or injunctive relief. See L.A. Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993); Am. Fire, Theft & Collision Managers, Inc. v. Gillespie, 932 F.2d 816, 818 (9th Cir. 1991). a. Basic Principles (1) Eligibility The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. See Saucier v. Katz, 533 U.S. 194, 201 (2001),

2. The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009). First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" Saucier, 533 U.S. at 201; see also Scott v. Harris, 550 U.S. 372, 377 (2007); Brosseau v. Haugen, 543 U.S. 194, 197 (2004) (per curiam); Hope v. Pelzer, 536 U.S. 730, 736 (2002); Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); Kennedy v. City of Ridgefield, 439 F.3d 1055, 1060 (9th Cir. 2006); Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002); Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). Second, the court must determine whether the right was clearly established at the time of the alleged violation. Saucier, 533 U.S. at 201; Scott, 550 U.S. at 377; Brosseau, 543 U.S. at 199-201; Hope, 536 U.S. at 739; Garcia v. County of Merced, 639 F.3d 1206, 1208 (9th Cir. 2011); Rodis v. City & County of San Francisco, 558 F.3d 964, 968 (9th Cir. 2009); Inouye, 504 F.3d at 712; Kennedy, 439 F.3d at 1060; Estate of Ford, 301 F.3d at 1050; Sorrels, 290 F.3d at 969. Even if the violated right was clearly established at the time of the violation, it may be "difficult for [the defendant] to determine how the relevant legal doctrine . . . will apply to the factual situation the [defendant] confronts. . . . [Therefore, i]f the [defendant's] mistake as to what the law requires is reasonable . . . the [defendant] is entitled to the immunity defense." Saucier, 533 U.S. at 205; Kennedy, 439 F.3d at 1061; Estate of Ford, 301 F.3d at 1050; cf. Inouye, 504 F.3d at 712 n.6 (explaining that the inquiry into the reasonableness of the defendant's mistake is not the "third" step in the Saucier analysis, but rather, is part of the second step of Saucier's two-step analysis).

3. "Unless, perhaps," the Court wrote, was "not necessary to a correct statement of the law, and . . . judges . . . are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction **and the clear absence of all jurisdiction over the subject-matter," with judges subject to liability only in the latter instance". Stump v. Sparkman, 435 U.S. 349 (1978), Bradley v. Fisher, 80 U.S. 335 (1871),** Liotti v Peace 2003 NY Slip Op 51762(U) Decided on September 23, 2003 Supreme Court, Nassau County DiBlasi, J.

4. The quoted statement from the Supreme Court clarifies that judges generally enjoy immunity from civil lawsuits for their judicial actions, even if those actions exceed their jurisdiction. However, this immunity does not extend to situations where the court entirely lacked jurisdiction over the subject matter. In such cases, the judge could be held liable.

5. The quote highlights the distinction between acting in excess of jurisdiction (where the judge's actions are outside their authority, but the court does have some jurisdiction over the case) and the clear absence of all jurisdiction. Judges are not liable for errors or mistakes within the scope of their jurisdiction, but they are subject to liability when they act in a case where the court has no authority at all.

6. Theory of Liability Even if deprivation represents an abuse of authority or lies outside the authority of the official, if the official is acting within the scope of his or her employment, the person is still acting under color of state law. See Anderson, 451 F.3d at 1068-69; McDade, 223 F.3d at 1140; Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

"The Garden City Justice Court is part of the Unified Court System of the State of New York. It hears all matters involving summonses for parking offenses, building violations, New York State Vehicle and Traffic Law violations and misdemeanors, Tax Law, and other matters New York State has placed under Village jurisdiction. If you plead guilty or not guilty by mail before the court date listed on your summons you do not have to appear in court on the court date. If you plead not guilty by mail you will be notified by mail at your address registered with the NYS DMV of the date for a conference with the Village Prosecutor and a Judge". See
https://www.gardencityny.net/190/Justice-Court

**Relief Sought:**

**Claimant now seeks damages against the defendant:**

| | |
|---|---|
| Greg Cutrone, Clerk for Garden City Traffic Court | $ 10 Million Dollars |
| Justice Allen Mathers, Justice Garden City Traffic Court | $150 Million Dollars |
| C. Gomoka, Garden City Village Traffic Prosecutor | $ 150 Million Dollars |

Attorney fees, and any other relief the Court deems proper

*Eric Owens* (signature)
Eric Owens, Plaintiff, Pro Se
14 Butler Street Apt 2C
Glen Cove, NY 11542
347-724-0609

Date: April 28, 2025

## DECLARATION UNDER PENALTY OF PERJURY

I **Eric Owens**, residing at 14 Butler St Glen Cove, NY 11542, Apt 2C declares under penalty of perjury that I am the Plaintiff And that I have read everything written within the complaint against the defendants:

4. Gregory Cutrone Clerk to the Village Justice
5. Allen Mathers, Justice Garden City
6. C. Gomoka, Garden City Village Traffic Prosecutor

And everything I written is to truthful and accurate.

*Eric Owens*

Eric Owens, Plaintiff
14 Butler Street Apt 2C
Glen Cove NY 11542
347-724-060
Ericowens90@yahoo.co

Date: April 28, 2025